IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**PIERRE D. JONES**                                                **PLAINTIFF**

**v.**                                                          **CAUSE NO. 1:20CV25-LG-RPM**

**GULF COAST RESTAURANT
GROUP INC.; HALF SHELL
OYSTER HOUSE BILOXI
LLC; and CHAD HENSON,
Individually**                                                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the [35] Motion for Summary Judgment filed by the defendants, Gulf Coast Restaurant Group Inc., Half Shell Oyster House Biloxi LLC, and Chad Henson. The parties have fully briefed the Motion. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the defendants' Motion should be granted.

## BACKGROUND

The plaintiff, Pierre D. Jones, first worked as a line cook at Half Shell Restaurant's Gulfport, Mississippi location for a few months in 2010. (Def.'s Mot. Ex. A, at 13, ECF No. 35-1). He returned to work at the Half Shell Gulfport in 2011. (*Id.* at 14). He was eventually promoted to the position of Assistant Kitchen Manager, but he was terminated after an argument with the kitchen manager. (*Id.* at 15). Half Shell Gulfport rehired Jones as a line cook a few months later. (*Id.* at 16, 22). In June 2016, Jones transferred to Half Shell's Biloxi restaurant where he was once again promoted to the position of Assistant Kitchen Manager. (*Id.* at 23).

Defendant Chad Henson was the general manager at the Biloxi location. (*Id.*) In May 2018, Jones informed Henson and Area Manager John Graham that he was interested in a promotion to the position of kitchen manager. (*Id.* at 35). Henson and Graham told him it would be best for him to undergo "front-of-house" training before becoming kitchen manager. (*Id.*) Jones said that he was interested in undergoing the front-of-house training, so he and Henson began talking about scheduling that training. (*Id.* at 36). Soon afterwards, Jones went to Half Shell's new Covington, Louisiana restaurant in order to assist with training. (*Id.* at 36-37).

Henson has testified by affidavit that Half Shell's Hard Rock Casino location had an open kitchen manager position during the summer of 2018. (Def.'s Mot. Ex. B, at 1-2, ECF No. 35-2). He explained:

> Although the Company preferred to promote employees to this position who also had front-of-house experience at the restaurant, there were no candidates at the time who fit that and other necessary criteria. The need for the Company to fill that position was becoming urgent, so despite the lack of front-of-house training, the Company ultimately considered [Jones] and another member of the Covington training team, John Wiggins, while the two were working in Covington on the training team.

(*Id.*) Jones testified that he was unaware he was being considered for the Hard Rock position while he was assisting with the training. (Def.'s Mot. Ex. A, at 43, ECF No. 35-1). During the training, Jones was counseled for burning almonds a few times and for deviating from the recipe card while making gumbo. (*Id.* at 39-40). During the Covington training, it was announced that Wiggins had been selected for the Hard Rock kitchen manager position. (*Id.* at 42). Jones testified that he "flipped out" after learning that Wiggins had been selected. (*Id.* at 44). As a

-2-

result, Jones was sent home early from the training. (*Id.*) Henson has testified that he did not participate in the Covington training, and he was not involved in the decision to promote Wiggins to the kitchen manager position at Hard Rock. (Def.'s Mot. Ex. B, at 2, ECF No. 35-2).

After returning to Half Shell Biloxi, Jones told Henson that he believed that Half Shell had discriminated against him by telling him that "front-of-house" training was required for the kitchen manager position and by choosing Wiggins for the position. (*Id.* at 46). Henson told Jones that he should not feel that way, and he explained that Jones would "not be a good fit" for the Hard Rock restaurant. (*Id.*)

Jones was terminated by Half Shell Biloxi on October 10, 2018. (Def.'s Mot. Ex. A, at 25, ECF No. 35-1). Half Shell replaced Jones, who is African American, with Jeremiah Morgan, who is Filipino. (Def.'s Mot. Ex. B, at 2, ECF No. 35-2). Henson testified:

> I believe that Plaintiff lied to me repeatedly, at the expense of his subordinate employee, Jeremiah Morgan, regarding Plaintiff's erroneous handling of a dish in October 2018. I reviewed video footage of the kitchen, which clearly showed Plaintiff's participation in handling the dish and his error in doing so. Because of Plaintiff's prior reprimand by Jaime Morgan for failing to follow recipes during the Covington opening, I was paying close attention to all food preparation in the kitchen in Biloxi to make sure it was being handled correctly.

(*Id.*). Jones has testified that he did not lie to Henson. (Pl.'s Resp. Ex. B, ECF No. 38-2). When Henson asked him who had made a seafood pot pie, Jones responded that the AM grill person, Jeremiah Morgan, had prepared the dish. (*Id.*) Jones claims that his response was accurate, because Morgan was the primary person who prepared the dish. (*Id.*) Jones only added crab meat to the dish once it had cooled.

(*Id.*) He explained, "I did not add the crab meat to the relevant dish until it had cooled, which complied with how Defendants instructed employees as to how to prepare the dish." (*Id.* at 2). Jones opines:

> It is common knowledge in the restaurant industry as well as just common sense to identify the cook who primarily prepared the dish as the person preparing the dish. At no time have I identified an employee who merely placed a topping [sic] a dish as the employee who prepared the dish. Nor have I ever witnessed or heard of any restaurant employee make [sic] such a ridiculous accusation. Had Defendant Henson asked me who placed the crab meat on the relevant dish I would have identified myself as doing so. However, it was clear from Defendant Henson's actions that he was merely looking for a way to terminate me.

(*Id.*) (numbered paragraphs omitted).

Jones filed this lawsuit against Gulf Coast Restaurant Group, Half Shell Biloxi, and Henson. He alleges that Gulf Coast Restaurant and Half Shell Biloxi were joint employers. He has filed race discrimination and retaliation claims against Gulf Coast Restaurant and Half Shell Biloxi pursuant to Title VII and 42 U.S.C. § 1981. He has also filed a tortious interference with employment claim against Henson. The defendants filed the present Motion for Summary Judgment. In response to the Motion, Jones has conceded that the defendants are entitled to summary judgment as to his claims concerning the defendants' decision not to promote him to the kitchen manager position. He denies that the defendants are entitled to summary judgment as to his claims concerning his termination.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail

as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). Factual controversies are resolved in favor of the non-moving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## I. RACE DISCRIMINATION

Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). Additionally, 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property[.]" When evaluating claims raised under both Title VII and Section 1981, courts "refer only to Title VII, because 'when used as parallel causes of action, Title VII and Section 1981 require the same proof to establish liability,' and 'it would be redundant to refer to both of

them.'" *Harville v. City of Houston*, 945 F.3d 870, 875 n.10 (5th Cir. 2019) (quoting *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 n.3 (5th Cir. 2016)).

A plaintiff can prove employment discrimination through either direct or circumstantial evidence. Where, as here, the plaintiff offers only circumstantial evidence of discrimination, the Court must analyze the case using the *McDonnell Douglas* burden-shifting framework as modified and restated by the Fifth Circuit. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

> Under the modified *McDonnell Douglas* approach, the plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic.

*Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007).

To establish a prima facie case of racial discrimination, Jones must present evidence that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). It is undisputed that Jones was a member of a protected group, and he was qualified for

the Assistant Kitchen Manager position that he held at the time of his termination. Furthermore, Jones was discharged and replaced by Jeremiah Morgan, a person outside Jones's protected group. As a result, Jones has established a prima facie case of discrimination.

The defendants have asserted a legitimate, non-discriminatory reason for terminating Jones — their belief that Jones had lied about who had prepared a dish and had failed to prepare the dish in accordance with the restaurant's recipe. (*See* Def.'s Mot. Ex. B, at 2, ECF No. 35-2). As a result, this case turns on the issue of whether there is a genuine issue of material fact as to pretext.

A plaintiff "must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Plaintiffs are required to "produce substantial evidence of pretext." *Wallace v. Methodist Health Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001)). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003) (internal quotation marks omitted). There are two ways to demonstrate pretext — by showing disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence. *Id.* at 578.

Disputing an employer's explanation for termination is not necessarily sufficient to support an inference of pretext. *Shakelford v. Deloitte & Touche, LLP*,

190 F.3d 398, 407 (5th Cir. 1999). The question is whether the employer's cited reason, whether accurate or not, was the real reason for discrimination. *Id.*

Jones has proffered no evidence that Half Shell's decision to terminate him was motivated by discriminatory animus. He has not attempted to show disparate treatment. He claims that he did not lie to his supervisor or err in adding a topping to a dish, and he opines that his termination must have been based on discrimination. Conclusory assertions of racial discrimination are insufficient to survive summary judgment. *Shackelford*, 190 F.3d at 405 (citing *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1186 (5th Cir.1997) (noting that bare allegations of racial discrimination are too speculative to create a jury question). "Management does not have to make proper decisions, only non-discriminatory ones." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (citing *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir.1991) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for termination)). "Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'" *Id.* (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)). As a result, Half Shell is entitled to summary judgment as to Jones's racial discrimination claim.

## II. RETALIATION

Jones also alleges that Half Shell's termination of his employment constituted retaliation in violation of Title VII and Section 1981. To state a prima

facie case of retaliation Jones must show that "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse [employment] action; and (3) a causal connection exists between the protected activity and the adverse action." *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015). "[A]t the prima facie stage, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (brackets omitted). At the prima facie stage, "a time lapse of up to four months may be sufficiently close." *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)

If the plaintiff establishes a prima facie case, then the employer has the burden of production to provide "a legitimate, non-discriminatory reason" for the adverse employment action. *Brown*, 969 F.3d at 577.

> If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual. A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that [his] employer's explanation is unworthy of credence.

*Id.* (citations and quotation marks omitted). "Ultimately, in order to survive a motion for summary judgment, a plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the adverse employment action but for the protected activity." *Id.* (citing *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)) (internal quotation marks omitted).

"[T]emporal proximity alone is insufficient to prove but for causation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).[1]

Jones has established a prima facie case of retaliation because: (1) he engaged in protected activity by claiming that he had been subjected to racial discrimination after being denied a promotion; (2) he was terminated; and (3) his termination was three months after he complained of racial discrimination. The defendants have asserted a legitimate, non-discriminatory reason for terminating Jones — their belief that Jones had lied about who had prepared a dish and had failed to prepare the dish in accordance with the restaurant's recipe. (*See* Def.'s Mot. Ex. B, at 2, ECF No. 35-2). Jones claims that the defendants' reason is pretext for discrimination because he claims he did not lie about who prepared the dish or prepare the dish improperly. As explained previously, disputing the accuracy of the defendants' reason does not establish pretext, because employers are permitted to make mistakes when making employment decisions. *See Bryant*, 413 F.3d at 478 ("Management does not have to make proper decisions, only non-discriminatory ones."). Jones has presented no evidence of discriminatory animus on the part of the defendants. Therefore, the defendants are entitled to summary judgment as to Jones's retaliation claim.

---

[1] The parties seem to confuse the standard of proof required to establish causation at the prima facie and pretext levels. At the prima facie level, "but for" causation is not required, and temporal proximity is sufficient as long as the timing is "very close." *Brown*, 969 F.3d at 577; *Feist*, 730 F.3d at 454. At the pretext level, "but for" causation is required, and "temporal proximity" alone is insufficient. *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 619 (5th Cir. 2020).

### III. TORTIOUS INTERFERENCE WITH EMPLOYMENT

Jones has sued his former supervisor, Chad Henson, alleging tortious interference with employment. The four elements of tortious interference with employment are:

> (1) that the acts were intentional and willful;
> (2) that they were calculated to cause damage to the plaintiffs in their lawful business;
> (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and
> (4) that actual damage and loss resulted.

*McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001). The parties dispute whether the third element is satisfied. Under this element, "[a] person in a position of authority on behalf of another is privileged to interfere with the contract between his principal and another." *Boland v. Miss. Dep't of Pub. Safety*, No. 3:17-CV-803-DPJ-RHW, 2019 WL 5970247, at *4 (S.D. Miss. Nov. 13, 2019) (quoting *Courtney v. Glenn*, 783 So. 2d 162, 165 (Miss. Ct. App. 2000)). This privilege applies if the person is "acting within the scope of that authority and without bad faith." *Id.* "Bad faith" is present "when an intentional act occurs whose purpose is to cause injury to business without right or good cause . . . ." *Morrison v. Miss. Enter. for Tech., Inc.*, 798 So.2d 567, 575-76 (Miss. Ct. App. 2001).

Jones's arguments in support of his tortious interference claim reveal a dispute as to semantics or simple miscommunication on the part of Henson and Jones. The affidavits presented reveal that Jones felt it was unnecessary to mention his role in preparing the dish when questioned by Henson on multiple

occasions, and Henson felt Jones's omission was dishonest. Jones has not presented any evidence of bad faith on the part of Henson, and he does not dispute that Henson was acting within the scope of his authority as Jones's supervisor. Therefore, Henson was privileged to interfere with Jones's employment contract, and he is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the defendants are entitled to summary judgment as to Jones's claims of racial discrimination, retaliation, and tortious interference with employment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the [35] Motion for Summary Judgment filed by the defendants, Gulf Coast Restaurant Group Inc., Half Shell Oyster House Biloxi LLC, and Chad Henson is **GRANTED**. This lawsuit is hereby **DISMISSED WITH PREJUDICE**. The Court will enter a separate judgment pursuant to Fed. R. Civ. P. 58.

**SO ORDERED AND ADJUDGED** this the 21st day of January, 2021.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE