# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 6, 2021
Lyle W. Cayce
Clerk

No. 21-60052

Pierre D. Jones,

*Plaintiff—Appellant*,

*versus*

Gulf Coast Restaurant Group, Incorporated; Half Shell Oyster House Biloxi, L.L.C.; Chad Henson, *Individually*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:20-CV-25

Before Jolly, Haynes, and Oldham, *Circuit Judges*.

E. Grady Jolly, *Circuit Judge*:

    Pierre Jones appeals a grant of summary judgment to his former employer, a restaurant chain, and to his former manager. He presents a prima facie case that the restaurant discriminated and retaliated against him. But he does not offer persuasive evidence that the restaurant's proffered, permissible reasons for his termination were a pretext for unlawful action. And he cannot show that his former manager acted with malice or bad faith to tortiously interfere with his employment. As such, we AFFIRM.

No. 21-60052

## I.

Half Shell Oyster House, a seafood restaurant chain owned by Gulf Coast Restaurant Group (collectively, "Half Shell"), hired Pierre Jones, who states that he is a black male, to work at its Gulfport location in 2010. After a brief separation from the company not relevant to this litigation, Jones returned to the restaurant as a line cook. Jones then moved to Half Shell's Biloxi location where he was promoted to be the sole Assistant Kitchen Manager in September 2016. During the entire duration of Jones's employment at Half Shell Biloxi, Chad Henson worked as the Biloxi restaurant's general manager.[1]

In May 2018, Jones sought a further promotion to a Kitchen Manager position at Half Shell's Hard Rock location. He spoke to Henson and John Graham, an area manager, to express his interest in the position. Henson and Graham told Jones that in the past, it hadn't been "the best idea" to promote an Assistant Kitchen Manager to Kitchen manager without front-of-house training, which Jones did not have.[2] Jones expressed interest in gaining this experience, and he and Henson later spoke about when he might begin front-of-house training. However, Jones never started the training, nor did he talk with Henson again about receiving it.

---

[1] Jones admits that Henson was likely involved in Jones's promotion from line cook to Assistant Kitchen Manager, and Henson confirms that he was involved in the decision to promote Jones. Henson hired a second Assistant Kitchen Manager about a year after Jones was promoted—Kendrick Franklin, who is the same race as Jones. Henson also states that after Jones's termination, he was involved in a decision to promote Franklin to Kitchen Manager at the Biloxi restaurant.

[2] "Front-of house" means "the part of a business such as a restaurant or hotel where the employees deal directly with customers" or "the employees of a restaurant, hotel, etc. who deal directly with customers." *Front-of-house*, CAMBRIDGE BUSINESS ENGLISH DICTIONARY (1st ed. 2011).

2

Case: 24-60052   Document: 00516010984   Page: 3   Date Filed: 09/13/2021
Case 5:20-cv-00025-DCB-RPM   Document 49   Filed 09/13/21   Page 3 of 9

No. 21-60052

Shortly after this conversation, in July 2018, Half Shell's training coordinator asked Jones to go to a new location in Covington, Louisiana to train new employees on the grill. However, Jones did not perform well: the training coordinator twice reprimanded him for mistakes he made in the kitchen. First, Jones left almonds in the oven too long a few times, allowing them to burn. And second, he did not follow the restaurant's set recipe for making gumbo: he made the shrimp in a separate pan instead of cooking it in the same pot as the gumbo. He stated he had been taught to do it this way by Henson so that the shrimp didn't burn at the bottom of the pot.

These mistakes spurred the training coordinator to send a strongly worded email to Jones, Henson, and others, stating in all caps that "WE DO NOT COOK GUMBO ANY OTHER WAY THAN WHAT IS ON THE RECIPE CARD." The email recipients were instructed to "FIX THE ISSUE, THERE IS NOTHING WRONG WITH THE RECIPE" or to "GET A BETTER COOK THAT PAYS MORE ATTENTION TO WHAT THEY ARE COOKING." The training coordinator also mentioned that she was "extremely upset" to hear about recipes not being followed and that she did "not want an excuse or another reason why we can't follow the recipe cards."

After these incidents, but while still in Covington, Jones attended a meeting in which Half Shell management announced that it was promoting John Wiggins, another trainer, to the Kitchen Manager position that Jones had wanted. Wiggins, a white male, had less experience than Jones and did not have front-of-house training.[3] Jones, by his own description, "flipped

---

[3] Henson states that although the company preferred to promote employees to Kitchen Manager positions who also had front-of-house experience, there were no candidates at the time of Wiggins's hire who fit that criteria. Because the company urgently

out" and displayed "behavior [that] wasn't good," so management sent him back to Biloxi—leaving the training early.

Once back in Biloxi, Jones spoke with Henson about Wiggins's promotion. He told Henson that he felt racially discriminated against. Henson denied that there had been discrimination, saying that Jones was not a good fit for the role. Jones did not speak to anyone else higher up in the company about the discrimination he had allegedly experienced, although the company had open-door and anti-discrimination policies.

Jones continued working at Half Shell Biloxi until October 2018. One morning while working, Jones observed another employee, Jeremiah Morgan, grilling ingredients as part of the process to make the seafood pot pie dish. Once the ingredients were cooked, Morgan put the grilled mixture in an ice bath to cool. Jones, by his own admission, added crab meat to the seafood pot pie mixture once it had cooled down and then placed the dish in a cooler. Later that day, Henson asked Jones who had made the seafood pot pie. Jones said that Morgan had. A few days after this conversation, Henson called Jones after work to tell him he was being fired.[4] Half Shell Biloxi proceeded to fire Jones on October 10, 2018, and Morgan, who is not a black male, was promoted to Assistant Kitchen Manager in his place.

Henson says that Jones was fired for lying to him about who had cooked the seafood pot pie—Jones said that Morgan had cooked it, when Jones certainly was involved in its preparation. Henson states that he knew Jones was lying because he reviewed video footage of the kitchen that

---

needed to fill the position, Wiggins and Jones were both considered for the Kitchen Manager role, even though neither of them had the preferred front-of-house experience.

[4] Henson did not have authority to fire Jones on his own; that decision required and was made in consultation with Graham—who Jones had initially spoken to along with Henson about his desire for a promotion.

"clearly showed" Jones's participation in handling the dish. Henson says that Jones was also fired for preparing the dish erroneously. Henson notes that he was paying close attention to all food preparation in the kitchen after Jones's incidents in Covington and the strongly worded reprimand for not following recipes that had followed.

Jones contends that he did not lie about who had "cooked" the seafood pot pie; he maintains that he did not "cook" the dish, only "finishing" it by adding crabmeat and putting it in a cooler. He further adds that it is common knowledge in the restaurant industry that the person who primarily prepared a dish is identified as its cook. According to Jones, no one would ever say that a person who placed a topping on a dish "cooked" it. Jones also states that he had followed the recipe by adding the crab meat when he did and did not do anything incorrectly.

After being fired, Jones filed a charge of discrimination with the EEOC in December 2018 and received a right-to-sue letter in August of the following year. In October 2019, Jones filed this lawsuit under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1). He alleged that Half Shell's termination of his employment and selection of Morgan, who is not a black male, to replace him was racial discrimination.[5] He also claimed that his termination was retaliation for complaining about the possibility of discrimination in Wiggins's promotion to Kitchen Manager; he contends that the reasons offered for his termination by the restaurant and Henson are false. Jones also brought a Mississippi state-law claim against Henson for tortious interference with his employment. The defendants argued that they did not discriminate or retaliate, that their reasons for firing

---

[5] During summary judgment briefing, Jones withdrew his claim that Wiggins's promotion to Kitchen Manager instead of him was due to discrimination.

were legitimate, and that Henson lacked the requisite bad faith to interfere with Jones's employment. They asked the district court to grant them summary judgment. It did. Jones appeals.

## II.

We review grants of summary judgment de novo, applying the same standard as the district court: the movant must show that there is "no genuine dispute as to any material fact." FED. R. CIV. P. 56(a); *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). "All reasonable inferences" must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in that party's favor. *La. Crawfish Producers*, 852 F.3d at 462. At the same time, a party cannot defeat summary judgment with "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). A full trial on the merits is only warranted when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *La. Crawfish Producers*, 852 F.3d at 462.

## III.

### A.

As mentioned above, Jones has brought discrimination and retaliation claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1).[6] Both discrimination and retaliation claims under Title VII are subject to the *McDonnell Douglas* burden-shifting framework. *See Brown v. Wal-Mart Stores*

---

[6] Jones also brought claims under 42 U.S.C. § 1981, but when § 1981 and Title VII are used as parallel causes of action, this court only refers to Title VII "because [both statutes] require the same proof to establish liability." *Harville v. City of Houston*, 945 F.3d 870, 875 n.10 (5th Cir. 2019).

No. 21-60052

*E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020); *Harville*, 945 F.3d at 874–75. For either type of claim, this framework requires the plaintiff to establish a prima facie case; the burden then shifts to the defendant to articulate a legitimate reason for the adverse employment action. *Brown*, 969 F.3d at 577; *Harville*, 945 F.3d at 875. If the employer provides such a reason, the burden then shifts back to the plaintiff to show that the reason is a pretext. *Brown*, 969 F.3d at 577; *Harville*, 945 F.3d at 875.

The defendants acknowledge that Jones has established a prima facie case on both his discrimination and retaliation claims, and Jones effectively concedes that the defendants have proffered two non-racially motivated reasons for his firing—but contests those reasons. Thus, the question this case boils down to is pretext: whether Jones has mustered sufficient evidence such that a jury could find the defendants' reasons to be pretextual.

**B.**

Pretext may be established through evidence of disparate treatment or by showing the employer's explanation to be false or "unworthy of credence"—that it is "not the real reason for the adverse employment action." *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021); *Laxton v. Gap Inc.*, 333 F.3d 572, 578–79 (5th Cir. 2003). If the employer offers more than one reason, the plaintiff "must put forward evidence rebutting *each* of the nondiscriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (emphasis added). What's more, the plaintiff must produce "substantial evidence" of pretext. *Id.* The quality and weight of the evidence determines whether it is substantial. *See Brown*, 969 F.3d at 577. In deciding whether summary judgment is warranted, a court should consider, among other things, "the probative value of the proof that the employer's explanation is false" and "any . . .

evidence that supports the employer's case." *Brown*, 969 F.3d at 577–78; *Harville*, 945 F.3d at 878–79.

Here, Jones only seeks to prove the defendants' explanation was false; he does not attempt to show disparate treatment. The defendants state that Jones was fired for (1) lying to Henson about whether he cooked the seafood pot pie and (2) failing to follow the seafood pot pie recipe as required. Jones counters that these reasons are a pretext for discrimination and retaliation because he (1) did not lie to Henson as he only "finished" the dish by adding crabmeat and (2) followed the recipe by adding the crabmeat when he did.

The sole evidence that Jones offers for these statements is his own declaration, but this court has held that a plaintiff's summary judgment proof must consist of more than "a mere refutation of the employer's legitimate nondiscriminatory reason." *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 815 (5th Cir. 1993). "Merely disputing" the employer's assessment of the plaintiff's work performance "will not necessarily support an inference of pretext." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999); *see also Brown*, 969 F.3d at 581 (collecting cases in which more evidence— including disparate treatment, harassment, or prior positive performance reviews—was required to survive summary judgment).

Here, as we have said before, we are "not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief," *Little*, 924 F.2d at 96, when the evidence in the record "supports [Half Shell's] proffered justification" and not Jones's claims of pretext. *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 722 (5th Cir. 2002). To the point, Jones has failed to show that the restaurant's asserted reasons for his

termination were pretextual.[7]  Consequently, the district court thus did not err in granting summary judgment.

## IV.

Jones's tortious interference with employment claim under Mississippi state law fares no better.  Tortious interference with employment requires (1) intentional and willful acts (2) calculated to cause damage to a plaintiff in his lawful business (3) that were done with malice and (4) resulted in actual damage and loss. *McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001).  Notably, supervisors acting within the scope of their responsibilities and in good faith cannot be held liable. *See Shaw v. Burchfield*, 481 So. 2d 247, 255 (Miss. 1985); *cf. Levens v. Campbell*, 733 So. 2d 753, 759–61 (Miss. 1999).  We reject Jones's showing of bad faith for the same reasons we rejected his showing of pretext, as we cannot say that Henson acted in bad faith or with malice.  Summary judgment was therefore appropriate on this claim as well.

## V.

We sum up: Jones cannot demonstrate that his former employer's reasons for firing him—lying and preparing a dish incorrectly—constitute pretextual reasons to cover over racial discrimination and retaliation.  Likewise, Jones's tortious interference with employment claim against Henson is missing a critical ingredient, i.e., bad faith or malice.  "Conclusory allegations," "unsubstantiated assertions," and "a scintilla of evidence" will not suffice to defeat summary judgment, and thus the judgment of the district court is, in all respects,

AFFIRMED.

---

[7] Accordingly, we need not address Jones's "cat's paw" argument.